UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
In re:                                            :
                                                  :
KINBRACE CORPORATION,                             :          Chapter 7
                                                  :          Case No. 12-12517 (SMB)
                                                  :
        Debtor.                                   :
------------------------------------------------------X
                                                  :
BARRY N. SEIDEL, Chapter 7 Trustee of             :
Kinbrace Corporation,                             :
                                                  :
        Plaintiff,                                :
                                                  :          Adv. Pro. No. 15-01432 (SMB)
        - against -                               :
                                                  :
DR. PETER RITTER,                                 :
                                                  :
        Defendant.                                :
------------------------------------------------------X

## MEMORANDUM DECISION GRANTING
## DEFENDANT'S MOTION TO DISMISS

**A P P E A R A N C E S :**

BLANK ROME LLP
*Attorneys for Plaintiff, Barry N. Seidel,*
    *Trustee of Kinbrace Corporation*
1825 Eye Street, NW
Washington, D.C. 20006

        Jeffrey Rhodes, Esq.
            Of Counsel

        --and—

405 Lexington Avenue
New York, NY 10174

        Evan J. Zucker, Esq.
            Of Counsel

PHILLIPS LYTLE LLP
*Attorneys for Defendant Dr. Peter Ritter*
620 Eighth Avenue, 23rd Floor
New York, NY 10018

> Allan L. Hill, Esq.
> Nickolas Karavolas, Esq.
>         Of Counsel

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

Defendant Dr. Peter Ritter, a Liechtenstein resident, served as the sole director, president, secretary and treasurer of Kinbrace Corporation ("Kinbrace"), a Liberian corporation, before Kinbrace was placed into involuntary chapter 7 in this Court.  After the Court ordered relief, the chapter 7 trustee for Kinbrace, Barry N. Seidel (the "Trustee"), brought this adversary proceeding.  He alleges, in substance, that Ritter breached his fiduciary duty and aided and abetted the breach of another's fiduciary duty, resulting in a significant prepetition default judgment entered against Kinbrace. (*Complaint*, dated Dec. 24, 2015 ("*Complaint*") (ECF Doc. # 1).)

Ritter has moved to dismiss the *Complaint* arguing that this Court lacks personal jurisdiction over him, or alternatively, that this Court should dismiss the *Complaint* pursuant to the doctrine of *forum non conveniens*.  Ritter also contends that a decision by the Supreme Court of the State of New York, New York County dismissing claims against Ritter on *forum non conveniens* grounds in a related action precludes the Trustee under collateral estoppel and the *Rooker-Feldman* doctrine from contesting the issue here.  For the reasons that follow, Ritter's motion to dismiss based on *forum non conveniens* is granted.

2

## BACKGROUND [1]

Kinbrace was organized under Liberian law on July 7, 1986.  (*Complaint*, Ex. A.)
At all relevant times, Ritter, a Liechtenstein resident, served as the sole director,
president, secretary and treasurer of Kinbrace.  (*Id.* at ¶ 12.)  Munyan was a New York
attorney, and at the relevant time, was working at the New York law firm of Riad &
Associates.  (*Id.* at ¶ 16.)  Munyan has since passed away.  (*See Letter from Barry N.
Seidel to the Court*, dated Sept. 10, 2015, at 2 (ECF/Main Case Doc. # 33).)

During the same period that Ritter managed Kinbrace, he also served as the
director of five Liechtenstein entities—Establishment Finapart, Establishment Figest,
Establishment Gour-Sande, Establishment Elatia and Establishment Sundekon
(collectively, the "Establishments").[2]  (*Complaint* at ¶ 18.)  In this capacity, Ritter
appointed Munyan as the attorney-in-fact for each of the Establishments, as well as the
Protector of four Liechtenstein trusts (the "Trusts") that ostensibly owned the
Establishments.[3]  (*Id.* at ¶ 19.)

---

[1]    "ECF" refers to the electronic docket in this adversary proceeding, and "ECF/Main Case" refers to
the electronic docket in Kinbrace's bankruptcy case.

[2]    An Establishment is a type of legal entity unique to Liechtenstein that has trust-like attributes,
such as named beneficiaries, but is similar to a corporate entity in that it has its own separate legal
existence, is governed by by-laws and is managed by a board of directors.  (*See Declaration of Nickolas
Karavolas, Esq. in Support of Defendant's Motion to Dismiss Adversary Proceeding*, dated Sept. 30,
2016 ("*Karavolas Declaration*"), Ex. C (the "*State Court Dismissal Order*"), at 2 (ECF Doc. # 17).)

[3]    The Establishments argued that, as the Protector, Munyan had exceptionally broad powers over
the trustees such that he was able to exercise *de facto* control over the Trusts.  (*See Karavolas
Declaration*, Ex. B (the "*State Court Complaint*"), at ¶¶ 56-58.)

Ritter and Munyan established a bank account on Kinbrace's behalf at Citibank, N.A. ("Citibank") in New York, as well as at banks in Switzerland, Paris and Bermuda. (*Id.* at ¶ 21.)  In connection with the Citibank account, Ritter executed various documents in Liechtenstein and sent them to Munyan in New York.  (*See Declaration of Evan J. Zucker in Opposition to Defendant's Motion to Dismiss Adversary Complaint*, dated Nov. 18, 2016, Exs. E & H (ECF Doc. # 19).)  The documents granted Ritter and Munyan signatory authority over the Citibank account, (*Complaint*, Ex. D), and Ritter also granted Munyan signatory authority over the bank accounts of the Establishments and the Trusts.  (*Id.* at ¶ 20.)  From 1997 to 2007, Munyan allegedly transferred millions of dollars from the Establishments' bank accounts into Kinbrace's Citibank account, and then used that money for his personal expenses.  (*Id.* at ¶ 21 & Ex. E.)

On April 14, 2004, Citibank grew troubled with Kinbrace's "operating and receiving wire transfers from high risk countries, coupled with managing expenses for unknown international entities" without Kinbrace having any agreements with those entities.  (*Id.* at ¶ 23.)  As a result, Citibank emailed Munyan on May 12, 2004 to inform him that it intended to close the account unless he provided certain information to explain and reconcile the suspicious account activity.  (*Id.* at ¶ 24.)  Munyan then wrote a letter to Ritter to inform him that Citibank had concerns about the account activity, and solicited ideas as to how to handle the situation.  (*Id.* at ¶ 25.)  Munyan was apparently unable to provide the requested information, and Citibank closed the account on June 29, 2004.  (*Id.* at ¶ 26.)

4

After Citibank closed Kinbrace's account, Munyan tried to open an account with JPMorgan Chase in New York ("Chase"), and sent account opening documents to Ritter, but Chase refused to open the account after hearing that Citibank had closed the account.  (*Id.* at ¶ 27.)  The Trustee has not supplied evidence that Ritter ever executed and returned the Chase documents.  Furthermore, the schedule of transfers attached to the *Complaint* does not show any transfers from the Establishments' accounts to a Chase account maintained by Kinbrace.  (*Id.*, Ex. E.)

In June 2007, Mr. Riad—Munyan's boss at Riad & Associates—discovered that Munyan had transferred millions of dollars of the Establishments' funds into his own personal bank account, fired Munyan and alerted Ritter.  (*Id.* at ¶ 28; *State Court Dismissal Order* at 6.)  Despite the warning, Ritter took no actions to remove Munyan as Kinbrace's attorney-in-fact until the end of 2007.  (*Complaint* at ¶ 30.)  After June 2007, $11,382.13 was transferred from an account at Nethou owned by one of the Establishments or a related company, (*id.* at ¶ 21), t0 Kinbrace's Citibank account.  (*Id.*, Ex. E, Pt. 2, at 3.)

## A.    The State Court Action

On April 9, 2009, the Establishments commenced an action against Kinbrace, Ritter, Munyan and others in the Supreme Court, New York County ("State Court Action") relating to Munyan's improper transfer and misuse of at least $15.5 million of the Establishments' funds.  The *State Court Complaint* alleged, *inter alia*, that Ritter and Kinbrace had aided and abetted Munyan's breach of fiduciary duty to the

5

Establishments, (*State Court Complaint* at ¶¶ 148-54; 166-71), and Ritter had breached

his own fiduciary duty to the Establishments, (*id.* at ¶¶ 187-92), and acted negligently.

(*Id.* at ¶ 193-97.)  Finally, the *State Court Complaint* alleged that Kinbrace was unjustly

enriched and had converted the Establishments' assets.  (*Id.* at ¶¶ 225-38.)

### 1.    Ritter's Dismissal from the State Court Action

Ritter moved to dismiss the State Court Action directed against him based on lack

of personal jurisdiction, and alternatively, on *forum non conveniens* grounds.  The New

York Court denied the first prong of Ritter's motion.  The *State Court Complaint* alleged

that Ritter had transacted business in New York on behalf of Kinbrace within the

meaning of N.Y.C.P.L.R. § 302(a)(1).  He appointed Munyan as Kinbrace's attorney-in-

fact, he authorized the opening of the New York bank accounts and he completed and

sent corporate documents to Munyan in New York for delivery to Citibank.  (*State Court

Dismissal Order* at 21-22.)  These allegations, taken as true, demonstrated that the

Establishments' jurisdictional claims were not frivolous and that discovery was

necessary.  (*Id.* at 22.)

The New York Court nonetheless dismissed Ritter from the State Court Action on

*forum non conveniens* grounds.  (*Id.* at 22-23.)  It observed that the plaintiff

Establishments were entities with corporate structures unique to Liechtenstein, Ritter

was also a Liechtenstein resident, and the transaction occurred in Liechtenstein.  (*Id.* at

23.)  Additionally, certain of the Establishments had already commenced proceedings in

Liechtenstein against Ritter pursuant to Liechtenstein law, and Liechtenstein clearly

had a strong interest in policing the activities of the Establishments' directors.  (*Id.*)
Finally, maintaining the State Court Action against Ritter would be burdensome given
the foreign parties, documents, witnesses and controlling law.  (*Id.*)

### 2.    State Court Judgment against Kinbrace

For unexplained reasons, Ritter never caused Kinbrace to defend the State Court
Action, and the New York Court eventually entered a default judgment in the sum of
$13,747,555.20 (the "Judgment") in favor of the Establishments and against Kinbrace
on July 14, 2011.  (*Complaint* at ¶ 14.)

## B.    The Bankruptcy Proceeding

On June 12, 2012, the Establishments filed an involuntary chapter 7 petition
against Kinbrace, and the Court ordered relief on October 18, 2012.  (ECF/Main Case
Doc. #s 1, 5.)   The interim chapter 7 trustee filed Schedules A-H on behalf of Kinbrace
on March 28, 2013.  (ECF/Main Case Doc. # 11.)  The only creditors listed in Kinbrace's
Schedules were the Establishments, which collectively held an unsecured nonpriority
claim in the sum of $13,747,555.00 on account of the Judgment.  (ECF/Main Case Doc.
# 11.)  As the sole creditors, the Establishments elected Seidel as the permanent Trustee
on August 2, 2013 pursuant to Bankruptcy Code § 702.  (*See Report of the United States
Trustee Regarding Undisputed Election of Chapter 7 Trustee*, dated Aug. 8, 2013, at 3
(ECF/Main Case Doc. # 22).)

The Trustee subsequently commenced this adversary proceeding against Ritter in
December 2015, asserting that Ritter had breached his fiduciary duty, aided and abetted

7

Munyan's breach of his own fiduciary duty to Kinbrace and failed to exercise appropriate oversight over Kinbrace's bank accounts and over Munyan, resulting in the Judgment against Kinbrace.  The Trustee's factual assertions largely mirrored those made by the Establishments in the *State Court Complaint* — Ritter knowingly participated in Munyan's scheme to steal Kinbrace's assets, failed to monitor Munyan's activity after providing him with signatory powers over Kinbrace's and the Establishments' bank accounts, and failed to monitor Kinbrace's financial health.  (*Complaint* at ¶¶ 36-50*; see State Court Complaint* at ¶¶ 148-154, 187-197.)

Ritter filed the instant motion to dismiss on September 30, 2016 pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedures made applicable to this adversary proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure.  (*Memorandum in Support of Defendant's Motion to Dismiss Adversary Complaint*, dated Sept. 30, 2016 ("*Ritter Memorandum*") (ECF Doc. # 15).)  He contends that the Court lacks general or specific personal jurisdiction over him, (*id.* at 6-16), or alternatively, the *Complaint* should be dismissed based on *forum non conveniens*.  (*Id.* at 22-29.)  He further maintains that the Trustee is precluded from contesting the *forum non conveniens* issue based on collateral estoppel and the *Rooker-Feldman* doctrine given Ritter's prior dismissal from the State Court Action.  (*Id.* at 16-22.)

The Trustee responded that this Court has specific personal jurisdiction over Ritter based on Ritter's hiring a New York attorney and signing and sending various documents to New York.  These facts, the Trustee argues, are sufficient to satisfy the

8

minimum contacts requirement for this Court to exercise personal jurisdiction without offending the traditional notions of fair play and substantial justice. (*Opposition to Defendant's Motion to Dismiss Adversary Complaint*, dated Nov. 18, 2016 ("*Trustee Opposition*"), at 9-13 (ECF Doc. # 18).) Additionally, the Court should not dismiss the case based on *forum non conveniens* because the Trustee's forum selection is entitled to significant deference, there is no evidence that a Liechtenstein forum could adequately adjudicate the matter, and the balance of private and public interests weigh in favor of hearing the matter in this Court. (*Id.* at 13-20.) Moreover, collateral estoppel and *Rooker-Feldman* do not apply. (*Id.* at 21-24.)

## DISCUSSION

Because of the Court's ruling regarding *forum non conveniens*, I address the parties' other arguments briefly. I decline to dismiss the *Complaint* for lack of personal jurisdiction for the same reasons articulated by the State Court. (*See State Court Dismissal Order* at 21-22.) Ritter hired Munyan to serve as Kinbrace's attorney-in-fact, sent corporate and bank documents to Munyan in New York to allow Munyan to open Kinbrace's Citibank account, and Munyan used the Citibank account to commit tortious acts within the state.

The *Rooker-Feldman* doctrine is inapplicable. "*Rooker-Feldman* bars the federal courts from exercising jurisdiction over claims 'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those

9

judgments.'" *Sykes v. Mel S. Harris & Assocs. LLC*, No. 13-2742-cv, 2015 WL 525904,

at *22 (2d Cir. Feb. 10, 2015) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,

544 U.S. 280, 284 (2005).)  The *Rooker-Feldman* doctrine applies where the following

four elements are present:

> First, the federal-court plaintiff must have lost in state court.  Second, the
> plaintiff must "complain[] of injuries caused by [a] state-court
> judgment[.]"  Third, the plaintiff must "invit[e] district court review and
> rejection of [that] judgment[]."  Fourth, the state-court judgment must
> have been "rendered before the district court proceedings commenced."

*Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) (quoting *Exxon

Mobil*, 544 U.S. at 284).

Ritter satisfied the first, second and fourth elements.  Kinbrace, the Trustee's

predecessor, lost in State Court, Kinbrace was injured by reason of the Judgment and

the State Court rendered the Judgment before the commencement of this bankruptcy

case and this adversary proceeding.  However, the Trustee is not asking the Court to

review and reject the Judgment.  Instead, the entry of the Judgment forms the basis of

the Trustee's claim for damages against Ritter.

Nor does collateral estoppel apply.  Under New York law, which applies by virtue

of 28 U.S.C. § 1738, the party invoking collateral estoppel must satisfy two elements:

> First, the party seeking the benefit of collateral estoppel must prove that
> the identical issue was necessarily decided in the prior action and is
> decisive in the present action . . . .  Second, the party to be precluded from
> relitigating an issue must have had a full and fair opportunity to contest
> the prior determination.  The burden is on the party attempting to defeat
> the application of collateral estoppel to establish the absence of a full and
> fair opportunity to litigate.

10

*D'Arata v. N.Y. Central Mut. Fire Ins. Co.*, 564 N.E.2d 634, 636 (N.Y. 1990).

Kinbrace, the Trustee's predecessor, was a party to the prior action.  However, Kinbrace did not assert claims against Ritter in the State Court Action, and the State Court never decided whether any claims that Kinbrace might assert against Ritter were subject to dismissal based on *forum non conveniens*.  Instead, the State Court decided that the Establishments' claims were subject to dismissal based on *forum non conveniens*.  Furthermore, Ritter has not argued that the Judgment entered by default against Kinbrace, which he caused by allowing Kinbrace to default in the State Court Action, has any preclusive effect on the Trustee.

I nevertheless conclude that *forum non conveniens* requires dismissal of the Trustee's action subject to the limitations discussed later in this decision.  "A federal court has discretion to dismiss a case on the ground of *forum non conveniens* when an alternative forum has jurisdiction to hear [the] case, and . . . trial in the chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience, or . . . the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems."  *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007) (citations and internal quotations omitted).  The *forum non conveniens* analysis calls for a three-step approach.  First, the court must determine the degree of deference to accord to the plaintiff's choice of forum.  Second, it must consider whether the defendant's proposed forum is adequate to adjudicate the parties' dispute.  Third, the court must balance the

11

private and public interests implicated in the choice of forum.  *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005), *cert. denied*, 547 U.S. 1175 (2006); *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73-74 (2d Cir. 2001) (*en banc*).  With respect to a *forum non conveniens* analysis, "a court considers not only the allegations of the pleadings but all evidence before it, and does not presume the facts pleaded to be true."  *Ramirez de Arellano v. Starwood Hotels & Resorts Worldwide, Inc.*, 448 F. Supp. 2d 520, 522 (S.D.N.Y. 2006) (citing *In re Livent Inc. Sec. Litig.*, 78 F. Supp. 2d 194, 200 (S.D.N.Y. 1999)).  The defendant bears the burden of proof on all of the elements of the motion.  *Bank of Credit Commerce Int'l (Overseas) Ltd. v. State Bank of Pakistan*, 273 F.3d 241, 246 (2d Cir. 2001).

### 1.    Plaintiff's Choice of Forum

A plaintiff's forum choice is generally afforded deference, but there is no bright line rule, and the degree of deference warranted "moves on a sliding scale depending on several relevant considerations."  *Iragorri*, 274 F.3d at 71 (citing *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)).  "Usually, the greatest deference is afforded a plaintiff's choice of its home forum," *NOrex*, 416 F.3d at 154, "while 'less deference' is afforded a foreign plaintiff's choice of a United States forum."  *Id.* (citing *Iragorri*, 274 F.3d at 72).  This lesser deference applies even where the nominal plaintiff is American, but is acting in a representative capacity for a foreign entity.  *VictoriaTea.com, Inc. v. Cott Beverages, Canada*, 239 F. Supp. 2d 377, 381 (S.D.N.Y. 2003) ("[W]here the local claimant is only nominally American, as in the case of an

assignee of a foreign corporation, the courts have generally refused to give special deference to plaintiff's choice of forum.") (citations and internal quotations omitted).

No one suggests that the Trustee has engaged in forum shopping; he sued in the home bankruptcy court.  Nevertheless, the Trustee has stepped into the shoes of Kinbrace, a Liberian entity, and his status is akin to an assignee of Kinbrace. Accordingly, his forum choice is entitled to diminished deference, but I assume that it weighs in favor of retaining the litigation in this Court.

### 2.    Adequate Alternative Forum

The second step in a *forum non conveniens* analysis is to determine whether an adequate alternative forum exists.  Ordinarily, "[a]n alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute."  *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 75 (2d Cir. 2003) (citing *Piper*, 454 U.S. at 254 n.22).  Both requirements are satisfied here.

First, Ritter submits that he is amenable to service of process in Liechtenstein, (*Ritter Memorandum* at 26), and in fact, is currently defending the Establishments' lawsuit in that jurisdiction.  Second, Ritter has demonstrated that the Liechtenstein courts have subject matter jurisdiction over the Trustee's claims.  According to the

affidavit of Christoph Bruckschweiger, LL.M.,[4] a Liechtenstein attorney who represents Ritter in the Liechtenstein litigation brought by the Establishments, (*Bruckschweiger Affidavit* at ¶ 4), Bruckschweiger reviewed the *Complaint*, and concluded that the claims brought against Ritter by the Trustee are almost identical to those brought against Ritter by the Establishments. (*Id.* at ¶¶ 5-6.) Most importantly, he opined that the claims brought by the Trustee against Ritter could be brought in Liechtenstein, and the claims are available under Liechtenstein law. (*Id.* at ¶ 10.)

In rare circumstances, despite meeting these criteria, an alternative forum may nonetheless be inadequate where such forum is "characterized by a complete absence of due process and an inability of a plaintiff to obtain substantial justice.'" *In re Arbitration Between Monegasque De Reassurances S.A.M. (Monde Re) v. Nak Naftogaz of Ukraine*, 311 F.3d 488, 499 (2d Cir. 2002). This presents a high bar to the litigant opposing a *forum non conveniens* dismissal because "considerations of comity preclude a court from adversely judging the quality of a foreign justice system absent a showing of inadequate procedural safeguards." *PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 73 (2d Cir. 1998). The Trustee has not argued that a Liechtenstein proceeding would not provide adequate procedural safeguards. Accordingly, the Liechtenstein forum is adequate.

---

[4]     *See Affidavit of Christoph Bruckschweiger, L.L.M. in Support of Defendant's Reply to Trustee's Opposition to Defendant's Motion to Dismiss Adversary Proceeding*, sworn to Jan. 12, 2017 ("*Bruckschweiger Affidavit*") (ECF Doc. # 22).

The Trustee could nonetheless face obstacles litigating in Liechtenstein.  In particular, a significant amount of time has passed since the commission of the wrongful acts alleged by the Trustee, and he could face a statute of limitations defense or other procedural defenses under Liechtenstein law or jurisdictional objections by Ritter that could foreclose the litigation in Liechtenstein.  This problem is not unique to this case, and a dismissal based on *forum non conveniens* can be made conditional.  *Bank of Credit and Commerce Int'l*, 273 F.3d at 247-48; *see also Blanco v. Banco Indus. de Venezuela, S.A.*, 997 F.2d 974, 984 (2d Cir. 1993) ("[F]orum non conveniens dismissals are often appropriately conditioned to protect the party opposing dismissal.") (citations omitted).  Thus, if the other factors point toward dismissal, the Court can impose conditions which, if not met, could return the litigation to this Court.

### 3.    Private and Public Interest Factors

The third step in the analysis requires the Court to balance the private and public interest factors set forth in the seminal Supreme Court case *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947).  The private interest factors include: (i) the relative ease of access to sources of proof, (ii) availability of compulsory process for attendance of unwilling witnesses, (iii) the cost of obtaining attendance of willing witnesses, (iv) issues concerning enforceability of a judgment if one is obtained, and (v) all other practical problems that make trial of a case easy, expeditious and inexpensive.  *Jacobs v. Terpitz (In re Dewey & LeBoeuf LLP)*, 522 B.R. 464, 477 (Bankr. S.D.N.Y. 2014) (citing *Gulf Oil Corp.*, 330 U.S. at 508-09).  "In assessing the private interest factors, 'courts should examine the specifics of the claims: rather than simply characterizing the case as one in

negligence, contract, or some other area of law, the court should focus on the precise issues that are likely to be actually tried.'" *Id.* (quoting *Airflow Catalyst Sys., Inc. v. Huss Techs. GMBH*, No. 11 cv 6012 (CJS), 2011 WL 5326535, at *4 (W.D.N.Y. Nov. 3, 2011)).

The private factors weigh heavily in favor of dismissal. The essence of the Trustee's claim is that Ritter, a Liechtenstein resident and Liberian fiduciary, breached his own fiduciary duty and aided and abetted Munyan's breach of his separate fiduciary duty. Ritter's acts of commission or omission occurred in Liechtenstein. He has travelled to New York or the United States on just four occasions, the last time in 1992, and none of these trips involved Kinbrace business. (*Affidavit of Dr. Peter Ritter in Support of Defendant's Motion to Dismiss Adversary Proceeding*, sworn to Sept. 26, 2016 (*Ritter Affidavit*"), at ¶¶ 20-22, 24 (ECF Doc. # 16).)[5] Furthermore, he is 79 years old, (*id.* at ¶ 3), and travelling to New York will present some degree of personal hardship.

The Trustee argues that he will need documents and witnesses from Citibank, and the bank's employees are key witnesses. (*Trustee Opposition* at 15, 18.) The transfers from the Establishments' accounts to the Citibank account do not appear to be in dispute. The Trustee presumably already has the necessary bank documents because

---

[5]    In addition, Ritter had a one night layover in San Francisco on his way to Tahiti. (*Ritter Affidavit* at ¶ 23.)

the *Complaint* attached a detailed reconstruction of all those transfers.  In any event, the parties to the Liechtenstein proceeding have exchanged documents relating to the New York bank transfers, including bank statements, (*Bruckschweiger Affidavit* at ¶ 8), and access to this proof does not appear to present a problem.  For this reason, the Trustee's contention that he needs the bank employees as key witnesses is unpersuasive since their only purpose would be to identify the bank documents.

The Trustee also contends that Riad, who works in New York, is a key witness. He allegedly discovered Munyan's theft of the Establishments' funds in June 2007, fired Munyan and alerted Ritter, but Ritter did not take action against Munyan until the end of 2007.  (*Trustee Opposition* at 18.)  This testimony could be important, but Liechtenstein law allows the parties to take Riad's deposition.  (*See Bruckschweiger Affidavit* at ¶ 8.)  Thus, a trial in Liechtenstein does not seem to present any practical problems with proof.  Furthermore, Riad's testimony is relevant to only a single transfer amounting to slightly more than $11,000.  Retaining the litigation in New York because it may be more convenient to adduce Riad's testimony when all of the other evidence pointing to over $15 million in transfers is located in Liechtenstein (and the Trustee can presumably take Riad's deposition) is unwarranted.

Finally, Ritter does not own any property in the United States, and a New York judgment against Ritter will be difficult to enforce in Liechtenstein.  According to Bruckschweiger, the Trustee would have to commence a new lawsuit in Liechtenstein, and the New York judgment would be persuasive but only if it had been granted on the

17

merits. (*Bruckschweiger Affidavit* at ¶ 11.)  The New York judgment would not be binding or enforceable under any circumstances, and it would be up to the Liechtenstein judge in the exercise of his or her discretion to determine what issues, if any, decided in this proceeding needed to be relitigated. (*Id.*)

A balance of the relevant public interest factors also weighs in favor of dismissal. The public interest factors include (i) the administrative difficulties flowing from court congestion, (ii) the local interest in having controversies decided at home, (iii) the interest in having a trial in a forum that is familiar with the law governing the action, (iv) the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law, and (v) the unfairness of burdening citizens in an unrelated forum with jury duty. *Dewey & LeBoeuf LLP*, 522 B.R. at 479 (citing *Gulf Oil Corp.*, 330 U.S. at 508-09); *accord RIGroup v. LLC v. Trefonisco Mgmt. Ltd.*, 949 F. Supp. 2d 546, 558 (S.D.N.Y. 2013) (citing *Iragorri*, 274 F.3d at 74).

Although Court congestion does not present a problem and Ritter did not indicate in his motion that he intends to request a jury (the Trustee did not), the other factors weigh in favor of dismissal.  The underlying controversy involves the acts and omissions of a Liechtenstein domiciliary, committed in Liechtenstein and relating to his fiduciary duty owed to a Liberian corporation.  The only scheduled creditors and the only creditors that have thus far filed proofs of claim (no bar date has been set) are the Establishments.  In fact, the adversary proceeding duplicates the proceeding brought by the Establishments in Liechtenstein.

18

Moreover, the Establishments rather than the Kinbrace estate are the injured parties, and in truth, this bankruptcy case commenced by the Establishments never served a purpose. The Kinbrace account was used as a conduit for the fraud perpetrated against the Establishments. It received the funds that Munyan stole from them, and Kinbrace never acquired title to that money. *See SEC v. Universal Express, Inc.*, No. 04 Civ. 2322 (GEL), 2008 WL 1944803, at *3 (S.D.N.Y. Apr. 30, 2008) ("It is a long-established general rule that 'a thief cannot convey a good title to stolen property.'") (quoting *Newton v. Porter,* 69 N.Y. 133, 137 (1877)). When Munyan thereafter siphoned the stolen funds from the Kinbrace account for his personal use, he stole the Establishments' money, not Kinbrace's. Kinbrace will be injured only to the extent it pays the Judgment but that seems unlikely. Kinbrace is bankrupt and has no assets.

Furthermore, under New York's internal affairs doctrine, Ritter's fiduciary duties and any breach of those duties will be determined under Liberian law. *See Marino v. Grupo Mundial Tenedora, S.A.*, 810 F. Supp. 2d 601, 607 (S.D.N.Y. 2011) ("New York applies the internal affairs doctrine to claims for breach of fiduciary duty and, thus, applies the law of the state of incorporation to such claims.") (citing *Walton v. Morgan Stanley & Co. Inc.*, 623 F.2d 796, 798 n.3 (2d Cir. 1980)); *Davis v. Scottish Re Grp., Ltd.*, 28 N.Y.S.3d 18, 20 (N.Y. App. Div. 2016) ("Under the internal affairs doctrine, claims concerning the relationship between the corporation, its directors, and a shareholder are governed by the substantive law of the state or country of incorporation . . . .") (citing *Hart v. General Motors Corp.*, 517 N.Y.S.2d 490 (N.Y. App.

Div. 1987), *leave to appeal denied*, 515 N.E.2d 910 (N.Y. 1987)).  Hence, Liberian law

will govern the Trustee's claim for breach of fiduciary duty.[6]

Accordingly, the Court concludes based upon consideration of the relevant

factors that this case should be dismissed under the doctrine of *forum non conveniens*.

As noted, however, it is necessary to condition that dismissal to prevent prejudice to the

Trustee should Ritter assert a defense of lack of personal jurisdiction or similar defense

in Liechtenstein, or contend that the Trustee's claims are foreclosed based on

procedural rules or the statute of limitations that would not present obstacles in this

Court.  In the event that litigation of the Trustee's claims is foreclosed in Liechtenstein

for these reasons, the Trustee can reopen this adversary proceeding provided he has

---

[6]       The applicable law governing the aiding and abetting claim is less clear.  As discussed in *Official Comm. of Unsecured Creditors of Hydrogen, L.L.C. v. Blomen* (*In re Hydrogen*), 431 B.R. 337 (Bankr. S.D.N.Y. 2010), case law in this district is split.  Some courts have looked to the internal affairs doctrine applicable to the primary breach of fiduciary duty violation; others have adhered to tort conflict of law principles and looked to the jurisdiction with the greatest interest in the dispute.  *Id.* at 350 (citing case law).  If New York law applies, the Trustee may face two obstacles.  First, aiding and abetting by a corporate fiduciary may be a breach of fiduciary duty itself rather than a separate aiding and abetting claim.  In that event, Liberian law will govern the claim.  Second, any aiding and abetting claim may be barred under *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 120 (2d Cir. 1991) since Ritter's acts will be imputed to Kinbrace, and Kinbrace will be seeking to recover for its own wrongdoing.

diligently pursued his rights in Liechtenstein.  To avoid any doubt, Ritter is free to

defend the Trustee's claims on the merits.

      Settle order on notice.


Dated:   New York, New York
        April 17, 2017

                /s/ *Stuart M. Bernstein*
              STUART M. BERNSTEIN
        United States Bankruptcy Judge

21